July 2, 2026

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  *United States v. Weidong Guan*,
> **24 Cr. 322 (VM)**

Dear Judge Marrero:

The Government respectfully writes in the above-captioned matter in response to the defendant's letter-motion (Dkt. 187) seeking to preclude multiple summary charts that the Government intends to present in its case-in-chief.  As set forth below, the summary charts and exhibits that the Government intends to offer are admissible and supported by extensive precedent, and will serve to greatly enhance the efficient and orderly presentation of evidence at this document-intensive trial.

> **I.** **Government Exhibits 801, 802, 803, and 852**

> A. *The Expected Testimony and Summary Charts*

The first set of summary charts the Government intends to offer, as the Government outlined for the Court at the final pretrial conference (PTC Tr. 36-43), consists of four charts to be offered in connection with the testimony of the Government's principal chronological summary witness, Special Agent David Fusco of the U.S. Attorney's Office for the Southern District of New York.  Because Special Agent Fusco may testify as soon as the first week of trial (depending on the pace of jury selection and of the testimony of the witnesses the Government will call before him), the Government respectfully requests that the Court rule on the admissibility of these summary charts first, so that the presentation of his testimony can proceed in an orderly manner.

Special Agent Fusco is expected to present summary testimony regarding, principally, voluminous sets of documents setting forth a detailed chronology of aspects of the charged

July 2, 2026
Page 2

offenses. The Government intends to present the large volume of evidence associated with Special Agent Fusco's testimony in an efficient and comprehensible fashion, including through the use of four summary charts. These four charts consist of Government Exhibit 801, a chronological summary of communications and financial records; Government Exhibit 802, a summary of names, email addresses, account usernames, and other identifiers used by dozens of individuals; Government Exhibit 803, a summary of over 90 bank and cryptocurrency accounts on which the defendant is a signatory; and Government Exhibit 852, a summary of 28 different voluminous Vietnamese-language spreadsheets maintained by the defendant's coconspirators for the purpose of carrying out the charged offenses.

The Government expects Special Agent Fusco principally to explain the methods by which he verified the summary charts and to read from or summarize portions (but not all) of the summary charts and certain of the underlying documents cited in them, as well as a small number of other exhibits not cited in the charts.

On June 16, 2026, the Government identified these four summary charts for the defendant (and his codefendant, who subsequently pled guilty and therefore is not proceeding to trial) and requested that he identify any objections to the admission of these summary charts, or to the admission of any of the underlying exhibits cited in any of those four summary charts, by June 26, to allow the parties to narrow or resolve any disputes and, if necessary, seek a ruling from the Court in advance of trial to allow these exhibits to be presented in an orderly manner.

At the final pretrial conference, on June 23, 2026, the Government asked the Court for a deadline for "any objections to that first set of charts and the exhibits underneath" them. (PTC Tr. 36; *id.* at 40-41 (requesting deadline for both objections to charts and "to the exhibits underlying it"); *id.* at 42 (requesting deadline for objections to the "hundreds of exhibits" underlying charts and the "charts summarizing those exhibits")). After hearing the positions of the parties, the Court set June 29, 2026 as the deadline for such objections. (*See id.* at 42).

On June 29, 2026—*i.e.*, the deadline for objections both to these summary charts and to the underlying exhibits—counsel for the defendant emailed the Government to state objections to the admissibility of the charts in their entirety. The defendant did not, however, identify any specific portion of any chart to which he objected (preventing the Government's ability to narrow or avoid any disputes by making changes), and did not object to any exhibit underlying any of the charts. Instead, slightly more than an hour after emailing the Government, the defendant filed his letter-motion.[1]

B. *Summary Charts and Summary Testimony Are Authorized Under Settled Law*

Contrary to the defendant's selective and at times inaccurate portrayal (Dkt. 187 at 2-4), summary charts—including summary charts virtually identical to those that he challenges here—

---

[1] As is common, the Government has made minor amendments to several of the summary charts at issue and has included replacement versions of the applicable exhibits in its exhibit production today.

and summary testimony reading those charts and other documents, are squarely admissible and have been regularly admitted both before and after the 2024 amendments to Federal Rule of Evidence 1006. Indeed, the Second Circuit has repeatedly upheld the use of such charts.

1. Rule 1006 Summary Exhibits

Summary charts, including chronological summaries of communications, are regularly admitted under the law of the Second Circuit. *See, e.g.*, *United States v. Menendez* ("*Menendez I*"), 759 F. Supp. 3d 460, 520 (S.D.N.Y. 2024) ("The Second Circuit has regularly affirmed the use of such charts." (internal quotation marks omitted)); *see also, e.g.*, *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020) (hundreds of pages of text messages, emails, and other documents "merited the use of summary charts in a complex fraud trial," citing cases); *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020) (affirming admission of summary chart of "hundreds of calls and text messages" and explaining that "this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary"); *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (affirming admission of "government's summary charts [which] set forth detailed information concerning well over 100 telephone calls spanning three days between four individuals"); *United States v. Lasko*, 146 F. App'x 530, 532 (2d Cir. 2005) ("The use of charts summarizing evidence is a common procedure whose use we have repeatedly approved." (internal quotation marks omitted)).

This precedent is well-supported. Rule 1006 expressly authorizes a summary of materials that are "voluminous" and "admissible." Fed. R. Evid. 1006. Consistent with the rule's plain language, the Second Circuit has held that charts of several dozen documents, totaling several hundred pages, are sufficiently voluminous to fall within the rule. *Ho*, 984 F.3d at 210 ("[W]hile it is true that summary charts are sometimes used to synthesize even larger volumes of documentary evidence than was the case here, it was clearly not an abuse of discretion for the district court to conclude that hundreds of pages of evidence merited the use of summary charts in a complex fraud trial.").

A Rule 1006 summary must be "'based on foundation testimony connecting it with the underlying evidence summarized and must be based upon and fairly represent competent evidence already before the jury.'" *Menendez I*, 759 F. Supp. 3d at 520 (quoting *Fagiola v. Nat'l Gypsum Co AC&S*, 906 F.2d 53, 57 (2d Cir. 1990) (ellipsis omitted)). "Objections that a summary 'd[oes] not fairly represent the [underlying] documents and [is] excessively confusing and misleading go more to [the summary's] weight than to its admissibility.'" *SEC v. Alpine Secs. Corp.*, 354 F. Supp. 3d 396, 419 (S.D.N.Y. 2018) (quoting *U.S. ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 163 (2d Cir. 1996)); *see also, e.g.*, *United States v. Hemphill*, 514 F.3d 1350, 1359 (D.C. Cir. 2008) ("Even if the calculations are mistaken, the chart is itself admissible, since admissible evidence may be unpersuasive and a defendant has the opportunity to rebut it."); *Nat'l Credit Union Admin. Bd. v. Wells Fargo Bank, N.A.*, No. 14 Civ. 10067 (KPF) (SN), 2020 WL 2216560, at *2 (S.D.N.Y. May 7, 2020) (quoting *Hemphill*).

Moreover, to have a proper foundation in the evidence, a summary chart need not be accompanied by "detailed testimony stating the basis" of each entry, but simply enough explanation to allow the jury to see how the information on the chart was "derived from the

underlying evidence." *United States v. Citron*, 783 F.2d 307, 317 (2d Cir. 1986); *see also id.* ("Our ruling that the chart was inadmissible does not mean that the government must provide detailed testimony stating the basis of each calculation undertaken when a summary chart is prepared. All that is required is enough explanation to allow the jury to see how the numbers on a chart were derived from the underlying evidence put before it.").

### *2.* Allegedly Argumentative Summaries

"[S]ummary exhibits are not rendered inadmissible merely because they present evidence in a manner that supports one party's theory of the case." *United States v. Palmer*, No. 24 Cr. 67 (NSR), 2025 WL 2978633, at *5 (S.D.N.Y. Oct. 21, 2025). While summary exhibits should not be "embellished by or annotated with the conclusions or inferences drawn by the proponent," *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998), the selection of material to summarize is not an objectionable "implied argument." *Palmer*, 2025 WL 2978633, at *5.[2] Accordingly, courts routinely reject challenges that summary charts allegedly "cherry pick," *United States v. Gentile*, No. 21 Cr. 54 (RPK) (PK), 2024 WL 3046193, at *3 (E.D.N.Y. June 18, 2024), or take evidence "out of context to support the government's narrative," *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2022 WL 669869, at *7 (S.D.N.Y. Mar. 7, 2022).

Indeed, the Second Circuit, in *United States v. Ho*, squarely rejected the argument that a summary chart consisting of a selective timeline of exhibits allegedly "created for the purpose of generating a narrative supporting the prosecution's theory of the case" is improper. *Ho*, 984 F.3d at 209-10; *see also, e.g.*, *United States v. Yousef*, 327 F.3d 56, 157-58 (2d Cir. 2003) (rejecting challenge to admissibility of Rule 1006 summary charts, noting that "the Government was (and [the defendant], if he had so chosen, would have been) entirely within its rights to use charts to draw the jurors' attention to particular evidence culled from a voluminous set of records."), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).

There is no requirement that one party's summary chart must include evidence that the opposing party wishes. Rather, "'a summary may include only evidence favoring one party, so long as the witness [presenting it] does not represent to the jury that he is summarizing all the evidence in the case.'" *Menendez I*, 759 F. Supp. 3d at 521 (quoting *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 333 (E.D.N.Y. 2013)); *see also, e.g.*, *DL v. District of Columbia*, No. 05 Civ. 1437, 2015 WL 6446087, at *6 (D.D.C. Oct. 23, 2015) (rejecting defense argument that a Rule 1006 chart was "inappropriately argumentative" because it was selective). Because "selection of relevant evidence for presentation to the factfinder is inherent to the nature of litigation," the "non-comprehensive nature of the data underlying a summary goes to evidentiary weight, not the threshold question of admissibility." *United States v. Hofstetter*, No. 15 Cr. 27 (TAV) (DCP), 2019 WL 5057176, at *5 (E.D. Tenn. Oct. 8, 2019) (internal quotation marks omitted); *see also, e.g.*, *United States v. Menendez* ("*Menendez II*"), 793 F. Supp. 3d 511, 560 & n.29 (S.D.N.Y. 2025) (rejecting argument that "[b]y compiling a variety of sources of information," summary exhibits

---

[2] *United States v. Conlin*, 551 F.2d 534 (2d Cir. 1977), cited by the defendant (Dkt. 187 at 2), does nothing to advance his argument. That case concerned a chart that contained an agent's written opinions, which were "inadmissible" and "arguably quite damaging," *Conlin*, 551 F.2d at 538-39, not a chart of admissible material that was challenged as allegedly selective.

"became improperly argumentative because they were rife with the Government's judgment determinations and conclusions").

Accordingly, a summary chart is admissible even when a defendant complains that it allegedly takes evidence out of context to support prosecution theories or does not include evidence the defendant wishes were highlighted. These complaints, in short, are arguments for the jury, not bases for preclusion. *See, e.g.*, *Menendez I*, 759 F. Supp. 3d at 521 (explaining admission of virtually identical summary charts, holding, "The fact that the government omitted documents and communications that the defense preferred be added to the chart does not mean that the summary is inaccurate or argumentative."); *Parnas*, 2022 WL 669869, at *7 (affirming admission of summary chart where defendant did "not contend that anything included in the charts was false; he instead assert[ed] that the charts were misleading because they took evidence out of context to support the government's narrative," reasoning it was "well within the government's right" to present evidence to support its narrative in its case in chief.); *United States v. Calk*, No. 19 Cr. 366 (LGS), Tr. 2-3 (S.D.N.Y. June 22, 2021) (admitting similar timeline charts over objection); *United States v. Gatto*, No. 17 Cr. 686 (LAK), Tr. 1443-48 (S.D.N.Y. Oct. 16, 2018) (admitting summary chart, rejecting defense argument that it should be used in "closing" instead); *see also, e.g.*, *United States v. Bendelstein*, No. 18 Cr. 309 (HG), 2023 WL 2457842, at *10 (E.D.N.Y. Mar. 10, 2023) ("Although Defendant asserts that the charts were improperly argumentative, he notably 'does not contend that anything included in the charts was false.'" (quoting *Parnas*, 2022 WL 669869, at *7-8)). In short, "[a] summary, to be admissible . . . need not give effect to the contentions to the accused," but only "be what it purports to be." *United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983) (internal quotation marks omitted).

The 2024 amendments to Rule 1006, contrary to the defendant's suggestion (Dkt. 187 at 3-4), reaffirmed and expanded the Second Circuit's binding precedents approving of such charts. For instance, before the amendments the Second Circuit, in *Ho*, upheld substantively indistinguishable summary charts but noted the presence of a limiting instruction in doing so. *Ho*, 984 F.3d at 210. The subsequent Rule 1006 amendment *expanded* (rather than limited) the use of summary charts by making clear that no such instruction was required. *See* Fed. R. Evid. 1006 adv. comm. n. ("Some courts have mistakenly held that a Rule 1006 summary is 'not evidence' and that it must be accompanied by limiting instructions cautioning against its substantive use . . . The court may not instruct the jury that a summary admitted under this rule is not to be considered as evidence.").

Indeed, following the amendments, both the Second Circuit and multiple courts in this district have continued to apply *Ho* in support of the admission of summary charts and testimony and to admit virtually identical chronological summary charts. *See United States v. Elias*, No. 23-6626, 2025 WL 2857883, at *4 (2d Cir. Oct. 8, 2025) (citing *Ho*, rejecting argument that summary witness testimony "amounted to an unfair and premature closing statement"); *see also Palmer*, 2025 WL 2978633, at *5; *Menendez II*, 793 F. Supp. 3d at 559-60 & n.29; *United States v. Lopez Reyes* ("*Lopez Reyes* Tr."), No. 23 Cr. 501 (JPC) (S.D.N.Y.) (Tr., 4/30/26, at 837-43) (admitting chronological summary charts that were "very similar" to charts in *Menendez I*, rejecting defense argument that charts were "an attempt at persuasive argument and unfair emphasis on intentionally selected portions of the government's evidence," noting that "Courts in this district have repeatedly

rejected" such arguments, referencing amendments to Rule 1006); *United States v. Sikkema* ("*Sikkema* Tr."), No. 24 Cr. 227 (ER) (S.D.N.Y.) (Tr., 5/19/26, at 628-29) (admitting chronological summary chart "virtually identical" to the *Menendez II* chronological summary chart, referencing amendments to Rule 1006).[3]

In citing *United States v. Maxwell* as somehow providing authority to exclude a summary chart, the defendant makes serious errors that refute his entire contention (though that contention already was irreconcilable with precedent). (Dkt. 187 at 2-3). Contrary to his express representation to this Court (Dkt. 187 at 2-3 (describing alleged rejection of government "summary exhibit" or "summary chart")), the rejected testimony in Maxwell *did not involve a summary chart at all*, but rather an agent testifying about comparisons performed between admitted documents, and doing that so briefly that the government was "not offering him under [Rule] 1006." *United States v. Maxwell*, No. 20 Cr. 330 (AJN) (ECF No. 757), Tr. 1985; *see also id.* at 1980 ("I anticipate that the testimony from Special Agent Buscemi would be likely something like 15 to 20 minutes, maybe slightly more, again, just talking about exhibits and the similarity of phone numbers and names between a variety of different exhibits. That's the scope of his testimony.")); *see also id.* at 1985 (offering AUSA describing her practice of calling witnesses "who helped publish and connect up facts across exhibits *without creating summary charts under Rule 1006*" (emphasis added)). Judge Nathan's rejection of a witness who was not offered under Rule 1006 and did not involve a summary chart says nothing about Rule 1006, much less the admissibility of any of the Government's Rule 1006 summary charts here. Indeed, in a portion the transcript not quoted by the defendant, Judge Nathan remarked that Rule 1006 expressly *covers* situations—such as those present here—in which "you've got a complicated, extensive set of records that are being summarized via a witness." (*Id.* at 1984).

### 3. Presentation of Summary Evidence and Testimony

Courts have also uniformly and properly permitted summary witnesses to read portions of summary charts to the jury, or to read other admitted exhibits, and have rejected arguments that doing so is akin to a summation. *See, e.g.*, *Lemire*, 720 F.2d at 1350 ("[A] summary should not draw controversial inferences or pronounced judgment; these functions are best left to the closing argument of counsel. Here, however, the summary involved only routine computations and culling through of documents to eliminate confusing and extraneous evidence. Consequently we find no force to the argument that [the summary witness's] testimony provided an unwarranted second closing for the government."); *United States v. Baker*, 923 F.3d 390, 398 (5th Cir. 2019) ("[A]lthough [the summary witness] highlighted some key pieces of evidence, the testimony did not draw inferences for the jury, was not 'wholly argumentative,' and did not serve as a substitute for closing argument. Rather, the testimony consisted of reading the contents of exhibits and

---

[3] In *Menendez I*, which was decided after the amendments to Rule 1006, Judge Stein affirmed the admission of charts virtually identical to the chronological charts here. *Menendez I*, 759 F. Supp. 3d at 520-22. Although the trial had taken place before the amendments, in the post-trial briefing Judge Stein looked to the amended rule as additional authority supporting their admission, without a limiting instruction. *Id.* at 525 n.28. Accordingly, Judge Stein ruled that these summary charts were properly admitted under amended Rule 1006, and not as illustrative aids under Rule 107.

sorting through the evidence to show how the documents related to each other and to the charges in the indictment."); *United States v. Nicholson*, No. 18 Cr. 23 (KS) (MTP), 2019 WL 2146605, at *2 (S.D. Miss. May 16, 2019) (similar, citing *id.*). A summary witness "'[l]ining up and comparing information' does not require impermissible inferences to be drawn." *Menendez II*, 793 F. Supp. 3d at 560-61 (quoting *United States v. Abou-Khatwa*, 40 F.4th 666, 686 (D.C. Cir. 2022)). Accordingly, asking a summary witness to, for example, "identify the date a message was sent and then compare that to the date of another document" in evidence is entirely permissible presentation of evidence, not argument. *Menendez II*, 793 F. Supp. 3d at 561.

The same principles, of course, apply to reading from the documents themselves as opposed to a summary. *See Fairholme Funds, Inc. v. Fed. Housing Fin. Agency*, 636 F. Supp. 3d 144, 161-62 (D.D.C. 2022) ("[T]o the extent defendants challenge the *selection* of documents [the witness] will read into the record . . . they cite no authority for the proposition that a witness reading documents into the record as part of non-summary testimony must also read documents, or portions thereof, that shed a more favorable light on the opposing party." (emphasis in original)); *see also, e.g.*, *United States v. Markovich*, 95 F.4th 1367, 1378 (11th Cir. 2024) ("Summary testimony need not summarize all the records at issue, but may be based on a mere subset, provided that the testimony does not purport to represent 'all the evidence.'" (citing *Flemister v. United States*, 260 F.2d 513, 517 (5th Cir. 1958))).

The defendant's citation to *United States v. Storm* (Dkt. 187 at 3) is inapposite. That case did not involve any ruling, let alone an exclusion of any evidence, but merely a confirmation that the government's summary witness examination would be proper under the governing legal principles. *See United States v. Storm*, No. 23 Cr. 430 (KPF) (S.D.N.Y.) (ECF No. 255 at 1095). The Government's examination here will also conform to the law, set forth herein, which squarely permits a summary witness to perform "routine computations and culling through of documents to eliminate confusing and extraneous evidence," *Menendez II*, 793 F. Supp. 3d at 560, and "[l]ining up and comparing information," *id.* at 561, so long as the witness does not "draw controversial inferences or pronounce[] judgment," *id.* at 560. Indeed, in *Storm*, the witness similarly, and properly, ultimately read selected excerpts of a variety of communications and other documents, including identifying dates, amounts, message participants, attachments, and other facts appearing from the documents, and comparing the dates of different exhibits to one another. *See, e.g.*, *Storm*, No. 23 Cr. 430 (KPF) (ECF No. 259 at 1448-556).

C. *The Summary Charts Are Admissible Under Rule 1006*

1. Government Exhibit 801

Government Exhibit 801 is a chronological summary of communications and other records that is substantively indistinguishable from the visual timeline approved by the Second Circuit in *United States v. Ho*, and is almost identical in form to chronological summary charts approved in numerous cases in this district, both before and after the amendments to Rule 1006. *See, e.g.*, *Menendez I*, 759 F. Supp. 3d at 520-22; *Menendez II*, 793 F. Supp. 3d at 559-60 & n.29; *Parnas*, 2022 WL 669869, at *7; *Lopez Reyes*, No. 23 Cr. 501 (JPC) (S.D.N.Y.) (Tr., 4/30/26, at 837-43);

*Sikkema*, No. 24 Cr. 227 (ER) (S.D.N.Y.) (Tr., 5/19/26, at 628-29).[4]  Courts have recognized that charts in this form, which "represented a subset of the underlying materials, arranged in chronological order," are not improperly "argumentative."  *Menendez I*, 759 F. Supp. 3d at 521.

The defendant's objections to Government Exhibit 801 principally concern the same meritless claims of cherry-picking that courts have repeatedly and soundly rejected.  (*Compare* Dkt. 187 at 5 ("It does not purport to reflect a comprehensive summary of any given set of underlying data or evidence") *with Lemire*, 720 F.2d at 1349 ("[a] summary, to be admissible . . . need not give effect to the contentions to the accused," but only "be what it purports to be."); *compare* Dkt. 187 at 5 (complaining that chart "references cherry-picked quotations or data") *with, e.g.*, *Menendez I*, 759 F. Supp. 3d at 521 ("The fact that the government omitted documents and communications that the defense preferred be added to the chart does not mean that the summary is inaccurate or argumentative."); *compare* Dkt. 187 at 5 ("The government selects references only from those documents it believes supports its theory of the case"); *with Parnas*, 2022 WL 669869, at *7 ("[The defendant] does not contend that anything included in the charts was false; he instead asserts that the charts were misleading because they took evidence out of context to support the government's narrative. But this was well within the government's right to do.")).

In addition to meritless claims of cherry-picking, the defendant baselessly complains about various common and appropriate features of summary charts.  The summary chart's use of "excerpt[s]" (Dkt. 187 at 5), is not a defect but a permissible and efficient technique.  *See, e.g.*, *Menendez I*, 759 F. Supp. 3d at 521 ("[T]he summary exhibits state the complete or excerpted content of messages, texts, and other documents").  Similarly, the fact that a summary chart combines data from multiple sources (Dkt. 187 at 5) is common and appropriate—and rightly so, because the purpose of a summary chart is to present efficiently that which is voluminous.  *See, e.g.*, *Menendez II*, 793 F. Supp. 3d at 560 n.29 ("[C]ourts in this District have admitted summary charts pursuant to Rule 1006 that compile information from several sources.").[5]

Finally, the only objection the defendant has raised to any of the exhibits underlying Government Exhibit 801 is a meritless hearsay challenge.  (*See* Dkt. 187 at 5).  The defendant identifies three Government Exhibits cited on Government Exhibit 801 as allegedly involving

---

[4] One of the *Menendez II* chronological summary charts (*Menendez II* GX 1352) is attached hereto as Exhibit A as an example.  The charts in *Menendez I*, *Parnas*, *Lopez Reyes*, and *Sikkema*, each of which have been recognized in judicial rulings as highly similar, are available upon the Court's request.  *See, e.g.*, *Menendez II*, 793 F. Supp. 3d at 558-59 (describing how *Menendez II* charts "largely mirror" *Menendez I* charts); *Menendez I*, 759 F. Supp. 3d at 521 (describing *Parnas* chart as having "nearly identical format"); *Sikkema* Tr. at 628-29 (describing *Sikkema* chart as "virtually identical" to *Menendez II* chart); *Lopez Reyes* Tr. at 840 (describing Lopez Reyes chart as "very similar" to *Menendez I* chart).  Upon the entry of an appropriate order, the Government can also provide a copy of another chart admitted under seal in *United States v. Alexander*, No. 24 Cr. 676 (VEC) (S.D.N.Y.), also following the amendments to Rule 1006, which has also been recognized to be "virtually identical" to the *Menendez II* and *Sikkema* charts.  *See Sikkema* Tr. at 628-29.

[5] The defendant does not contend that the data summarized in this 101-page, over 1600-row chart is not voluminous, nor could he.

inadmissible hearsay communications (*See* GX 801 rows 64-65, 69-70 (citing GX 1C-1 for communications between Gemini and defendant); *id.* row 344 (citing GX 1C-4 for photograph of defendant transmitted by defendant to cryptocurrency exchange); *id.* row 1561 (citing GX 1D-14 for communication between Kraken and defendant)). But none of those entries on the chart actually involve hearsay. Rather, they involve communications to and from the defendant that the defendant has already represented he is not challenging. (*See* Dkt. 146 at 6 n.3; Dkt. 175 at 1 n.1 ("Mr. Guan's moving brief is explicit that it applies only to communications that were not provided to Mr. Guan.")). The defendant's hearsay objection to Government Exhibit 801 can be deemed waived, but it also in any event fails because the communications plainly go to the defendant's knowledge and state of mind.[6]

### 2. Government Exhibit 802

Government Exhibit 802 is a summary chart of identifying information including names, aliases, phone numbers, email addresses, Facebook and Paxful account information, and other similar details for 33 different individuals. The defendant does not appear to contend that the data summarized in this chart, which is drawn from 84 exhibits and runs to approximately 1967 pages, is not voluminous, nor would any such objection be remotely availing. He instead claims that this sort of reference summary is allegedly "a classic example of an illustrative aid" instead of a summary exhibit. (Dkt. 187 at 5). But there is nothing "illustrative" about this tabular summary of identifiers. Instead, it is plainly a summary of admissible content that "cannot be conveniently examined in court," Fed. R. Evid. 1006(a). The Second Circuit has long approved of the use of Rule 1006 summary charts to "draw the jurors' attention to particular evidence culled from a voluminous set of records," *Yousef*, 327 F.3d at 157-58, and requiring the jurors to comb over a disparate collection of emails, spreadsheets, lengthy Facebook chats, and device extraction reports to find the "particular evidence" associated with user names and identifiers is impracticable and not remotely required by Rule 1006 or precedent.

Indeed, this summary chart is virtually identical to one admitted as a Rule 1006 summary chart in the *Menendez II* trial, attached hereto for reference. (*See* Ex. B (*Menendez II* GX 1355)). Although the *Menendez II* post-trial briefing focused principally on the chronological summary charts, this chart was also challenged by the defendant in post-trial briefing and thus also upheld by Judge Stein under the amended Rule 1006. *See United States v. Menendez*, S4 23 Cr. 490 (SHS) (ECF No. 868 at 18 n.9 (defendant challenging, among other summary charts, GX 1355));

---

[6] To the extent the defendant is complaining about other portions of the cited exhibits, *not cited* in Government Exhibit 801, that contain internal communications, the Government made redactions to those exhibits and produced replacement versions to the defendant, as it indicated it intended to do at the final pretrial conference (PTC Tr. 20). If the defendant is dissatisfied with those redactions, the remedy—if any is appropriate—would be further redaction of those uncited portions of the exhibits, not exclusion of a chart that cites only *admissible* portions.

*Menendez II*, 793 F. Supp. 3d at 561 ("In sum, defendant's challenges to the government's use of summary charts and summary witnesses fail.").[7]

### 3.  Government Exhibit 803

Government Exhibit 803 is another example of a classic summary of voluminous records, in this case twenty exhibits consisting of approximately 539 pages of bank account signature cards and other bank and cryptocurrency exchange documents.[8]  The defendant's only objection to this summary chart is that he purportedly believes that the underlying records are not voluminous enough under Rule 1006. (Dkt. 187 at 6). That objection flies in the face of the Second Circuit's decision in *Ho*, approving charts that summarized fewer pages than here.  *See, e.g.*, *Ho*, 984 F.3d at 209 (approving chart summarizing 370 pages of material and chart summarizing 399 pages of material); *id.* at 210 ("[W]hile it is true that summary charts are sometimes used to synthesize even larger volumes of documentary evidence than was the case here, it was clearly not an abuse of discretion for the district court to conclude that hundreds of pages of evidence merited the use of summary charts in a complex fraud trial.").  The objection also has no basis in Rule 1006 itself, or common sense.

In order to grasp the appropriateness of a summary chart for this material, the Court need look no further than just one of the cited exhibits, which is alone an over 300-page compilation of bank signature cards (GX 2B-51UR), that obviously "cannot be conveniently examined in court," Fed. R. Evid. 1006(a).  Nothing in Federal Rule of Evidence 1006 suggests, much less requires, that the jury be left to scroll through a several-hundred-page collection of signature cards to find the precise pages containing the information for a single one of these bank accounts—let alone to then repeat the process *33 more times* for each of the other bank accounts summarized in this summary exhibit and sourced to this same voluminous exhibit.

### 4.  Government Exhibit 852

Government Exhibit 852 is a summary of data in, and metadata concerning, a collection of highly voluminous and unwieldy spreadsheets maintained by the defendant's coconspirators.  The defendant levels several unavailing objections at this manifestly appropriate summary of voluminous data.  (Dkt. 187 at 6).

First, the defendant's claim that the data being summarized is not voluminous (Dkt. 187 at 6) does not withstand inspection of even a fraction of the spreadsheets.  These dense and unwieldy Vietnamese-language spreadsheets contain in some cases thousands of rows of transaction data,

---

[7] The defendant's parenthetical seeming to cast doubt on whether he believes the underlying exhibits will be admitted into evidence (Dkt. 187 at 5), is puzzling, since he did not object to any of those underlying exhibits on the Court-ordered deadline of June 29, 2026.  (PTC Tr. 42).  The defendant has thus provided no evidentiary basis to exclude the underlying exhibits.

[8] As with Government Exhibit 802, given that the defendant did not object to any of the underlying exhibits by the Court-ordered June 29, 2026 deadline, the underlying exhibits should be admitted in evidence.

profit calculations, account data, and stolen personally identifiable information. Many of these spreadsheets have multiple tabs, resulting in a total of well over 150 separate tabs, and a total of over 100,000 rows. Indeed, a number of the spreadsheets "cannot be conveniently examined in court," Fed. R. Evid. 1006(a), for the additional reason that their internal features make the performance on certain computers inconveniently slow and intermittently unstable.[9] These are exactly the type of voluminous records for which Rule 1006 was designed.

The defendant next makes the same meritless cherry-picking claims he levels against Government Exhibit 801 (*see* Dkt. 187 at 6 (complaining that Government "does not attempt to summarize the entire spreadsheet or make calculations based on data contained therein, but rather makes note only of those portions helpful to the government")). But as explained above, contrary to the defendant's arguments, under settled law, summarizing the portions the Government believes are relevant is "'well within the government's right," *Menendez II*, 793 F. Supp. 3d at 521 (quoting *Parnas*, 2022 WL 669869, at *7), and if the defendant wishes to "summarize the entire spreadsheet" (Dkt. 187 at 6) he is free to do so himself under the Rules of Evidence.

The defendant's remaining objection is that the summary exhibit uses paraphrases or other non-verbatim summary text rather than simply a series of quotations. (Dkt. 187 at 6 (complaining that Government's summary "often us[es] language that does not appear anywhere in the underlying evidence")). Despite calling this use of paraphrasing "commentary," the defendant identifies no respect in which it is a "commentary *about* the evidence" (*id.* (emphasis added))— let alone unfair or argumentative commentary—as opposed to simply a paraphrased summary *of* the evidence. While quotation is a permissible form of summary, *see, e.g.*, *Menendez I*, 759 F. Supp. 3d at 518, so is paraphrasing or other non-verbatim summary text, as was in fact featured in the timeline charts the Second Circuit approved in *Ho*. (*See, e.g.*, Ex. C at 1 (chart entry: "HO introduces himself to PGA Sam Kutesa's aide and requests a meeting with Sam Kutesa"); *id.* at 2 (chart entry: "HO directs Zhang Ya to prepare various reports")). The defendant notably does not identify any respect in which any of the non-verbatim summary text inaccurately reflects the underlying exhibit, and in any event such objections go principally to weight and are not grounds to exclude this summary exhibit. *See, e.g.*, *Alpine Secs.*, 354 F. Supp. 3d at 419 ("Objections that a summary does not fairly represent the underlying documents and is excessively confusing and misleading go more to the summary's weight than to its admissibility." (internal quotation marks and brackets omitted)).

## II. Objections to the Additional Charts

In addition to providing his objections, on the schedule set by the Court, to the summary charts to be offered in connection with the testimony of Special Agent Fusco, the defendant moves to exclude four additional exhibits the Government intends to use in connection with other witness testimony, of which: (a) two the defendant claims not to understand the purpose of but never asked the Government to explain, and are in any event clearly proper summaries, (b) one is a

---

[9] Government counsel assumes that these performance issues arise from a combination of the file size and the internal mathematical formulas embedded in these Excel spreadsheets, but has not undertaken a full technological investigation of the performance issues.

chronological summary of financial, communications, and other records similar in nature to Government Exhibit 801 and the numerous cases approving similar charts, and (c) one is a chart intended to be used as an illustrative aid under Rule 107, not a summary exhibit under Rule 1006.

### A. *Government Exhibit 809*

The defendant challenges Government Exhibit 809 (Dkt. 187 at 6), a chart listing metadata and sourcing information for several hundred Government Exhibits that are derived from underlying electronic evidence sources, including seized electronic devices and accounts. This chart is intended to be used in connection with the testimony of Denis Walsh, a Digital Forensic Examiner with the U.S. Attorney's Office for the Southern District of New York, who will testify, to the extent necessary, about his verification that the listed Government Exhibits were extracted from the listed source devices and accounts.[10] The Government does not intend to offer all of the cited Government Exhibits at the time of the introduction of Government Exhibit 809, but it is itself admissible, *see* Fed. R. Evid. 1006(a) (summary admissible "to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, *whether or not they have been introduced into evidence*." (emphasis added)), and will be a useful reference for the jury regarding source and metadata information for the many electronic evidence exhibits that the Government does intend to admit.

In light of the Government's discussions with the defendant regarding stipulations following co-defendant Hung's plea, the Government may not ultimately need to offer this exhibit, but if it does, this summary is plainly admissible as a summary of source and metadata information for undeniably voluminous Government Exhibits. Indeed, Government Exhibit 809 is highly similar to an exhibit that Judge Stein ruled admissible in *Menendez II*. (*See* Ex. D (*Menendez II* GX 2435-15)). Should the Government offer the exhibit, it should be admitted, to spare the jury the laborious and unnecessary task of poring through document metadata for over 700 Government Exhibits.

### B. *Government Exhibit 853*

Government Exhibit 853 is a summary of voluminous email, financial transaction, and Paxful trade chat data related to a series of individuals who sold Green Dot prepaid debit cards, or Venmo funds, to members of the MMO Team on the Paxful platform. This exhibit is intended to be used in connection with the testimony of Timothy Pak, a Financial Analyst with the U.S. Attorney's Office for the Southern District of New York, who is expected to provide foundation testimony regarding his verification of the chart, explain it, and read from portions of it to the jury.

---

[10] Following the final pretrial conference, the Government provided to defense counsel a summary of the intended uses of Government Exhibits 801, 802, 803, and 852—*i.e.*, the exhibits as to which the Government had solicited defense objections and understood them to be questioning—and offered to discuss if helpful. The Government received no follow-up inquiries regarding those four charts, and no inquiries regarding any other charts.

None of the defendant's complaints about this chart is a basis to preclude it. The chart will be accompanied by foundation testimony, which need not be "detailed testimony stating the basis" of each entry, but simply enough explanation to allow the jury to see how the information on the chart was "derived from the underlying evidence." *Citron*, 783 F.2d at 317. The "Unique Names" column, which the defendant questions (Dkt. 187 at 6), has been renamed in a revision of Government Exhibit 853, and Mr. Pak will provide testimony as to how he verified each entry in this column by reviewing voluminous Paxful trade chat data and ascertaining that the indicated user provided that name in a Paxful trade chat.[11] As the defendant does not challenge that the data summarized is voluminous (nor would any such challenge have any merit, given that the over 100 exhibits summarized span thousands of pages), this chart should be admitted once the foundation testimony is offered.

C. *Government Exhibit 901*

Government Exhibit 901, objected to by the defendant (Dkt. 187 at 6), is a chronological summary of communications and financial records similar in nature to Government Exhibit 801, summarizing records associated with 33 sets of complex financial transactions. The chart, which itself spans hundreds of rows, summarizes, among other things: spreadsheets of transaction data from banks and other financial institutions (spanning thousands, if not tens of thousands of rows), hundreds of pages of Paxful trade chats and associated trade data, unwieldy spreadsheets of account user data (also spanning thousands of rows), and email communications and email account subscriber information. The Government intends to use this summary in connection with the testimony of Mr. Pak.

The defendant centers his objection solely on the same meritless argument he advances with respect to Government Exhibit 801: that, because the chronologies contain excerpts of evidence the Government considers relevant, they are necessarily argumentative. (Dkt. 187 at 6 ("This again amounts to a summation[.]")). Specifically, the defendant asserts that, by summarizing transactions in which certain prepaid debit cards (loaded with funds from particular sources like state unemployment agencies) sent funds to accounts affiliated with the Epoch Times, the charts themselves "draw the inference that because the cards were transacted at Epoch Times then Mr. Guan knew that the cards contained proceeds of unlawful activity." (Dkt. 187 at 6-7). That is false. The charts neutrally summarize, in chronological fashion, relevant evidence reflecting select transactions. That the Government may *argue* to the jury, in its jury addresses, that these transactions and the order in which they occurred (*i.e.*, the flow of funds), as shown in the chart, provides a basis for *the jury* to infer that the defendant knew that the transactions involved the proceeds of unlawful activity does not mean that the charts themselves contain such a characterization. They contain none.

As detailed above, using summary charts in this fashion is plainly permissible. The Second Circuit has emphasized that, charts may properly be used to "draw the jurors' attention to particular evidence culled from a voluminous set of records," *Yousef*, 327 F.3d at 157-58, and rejected

---

[11] As the context will make clear, these names corresponded to the cardholders of prepaid debit cards that the Paxful sellers were selling to the MMO Team.

arguments that a summary cannot be "created for the purpose of generating a narrative supporting the prosecution's theory of the case," *Ho*, 984, F.3d at 209-10, or that presenting such a chart "amount[s] to an unfair and premature closing statement," *Elias*, 2025 WL 2857883, at *4.

At bottom, although it focuses on a series of transactions rather than a time period, Government Exhibit 901 is substantively indistinguishable from Government Exhibit 801. As such, it is similarly supported by all of the same authorities recognizing that such charts that "represented a subset of the underlying materials, arranged in chronological order," are not "argumentative," *Menendez I*, 759 F. Supp. 3d at 521, and admitting such charts. *See, e.g.*, *id.* at 520-22; *Menendez II*, 793 F. Supp. 3d at 559-60 & n.29; *Parnas*, 2022 WL 669869, at *7; *Lopez Reyes*, No. 23 Cr. 501 (JPC) (S.D.N.Y.) (Tr., 4/30/26, at 837-43); *Sikkema*, No. 24 Cr. 227 (ER) (S.D.N.Y.) (Tr., 5/19/26, at 628-29). Like all of these substantively similar chronologies of communications, it should be admitted under Rule 1006 to promote the efficient and orderly presentation of evidence at this trial.

### D. *Government Exhibit 854*

The defendant also objects to Government Exhibit 854 (Dkt. 187 at 6), which organizes and compares certain evidence summarized in Government Exhibit 901. The Government presently intends to offer Government Exhibit 854 as an illustrative aid under Rule 107 in connection with Mr. Pak's testimony, not a summary chart. As such, the Government considers the defendant's objections to this exhibit to be moot. An illustrative aid may be presented "if the aid's utility in assisting comprehension is not substantially outweigh[ed] by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." Fed. R. Evid. 107. This clear and straightforward chart has tremendous "utility in assisting comprehension," and poses no danger of unfair prejudice. Indeed, its form and the type of comparisons it lists— such as "lining up and comparing" whether names and locations on records match, *Menendez II*, 793 F. Supp. 3d at 560-61, or reflecting "routine computations" such as computing the time between events, *Lemire*, 720 F.2d at 1350)—would be squarely permissible for a summary chart,

Honorable Victor Marrero
July 2, 2026
Page 15

if the evidence it summarized were voluminous.  Given that it is being offered not even as a summary but as an illustrative aid, it should be permitted to be presented as such.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  s/ Paul M. Monteleoni
Benjamin M. Burkett
Rebecca T. Dell
Paul M. Monteleoni
Amanda C. Weingarten
Assistant United States Attorneys
(212) 637-2455 / 2198 / 2219 / 2257

Enclosures

cc:      (by ECF)

Counsel of Record